IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | In Chapter 11 |
| | ) | |
| ALLIANCE STAFFING, INCORPORATED d/b/a ALLIANCE HUMAN RESOURCE SERVICES, | ) ) ) ) | Case No. 08 B 6100

Honorable Bruce W. Black |
| | ) | |
| Debtor. | ) | |

**FINAL ORDER AUTHORIZING: (A) THE DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (B) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; AND (C) APPROVING AND AUTHORIZING DEBTOR TO ENTER INTO CERTAIN RELATED DOCUMENTS**

THIS CAUSE COMING ON TO BE HEARD on the Motion of the Debtor, ALLIANCE STAFFING, INCORPORATED d/b/a ALLIANCE HUMAN RESOURCE SERVICES ("Debtor"), for a Final Order Authorizing: (a) the Debtor's Use of Cash Collateral Pursuant to section 363(c)(2) of the Title 11 of the United States Code (the "Bankruptcy Code"); (b) the Debtor to Obtain Postpetition Financing Pursuant to section 364(c)(1) of the Bankruptcy Code; and Approving and Authorizing the Debtor to Enter into Certain Related Factoring Documents (the "Motion").

On March 14, 2008, this Court, Judge John Schwartz, presiding, entered an order approving interim use of cash collateral and interim financing.

After a hearing, and consideration of the Motion, the statements made by parties in interest at the Hearing, the Court hereby makes these following findings of fact and conclusions of law: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the order of reference entered in this District on July 16, 1984, pursuant to 28 U.S.C. § 157; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), and (M); (c) service of the Motion and

notice of the Hearing was sufficient under the circumstances and any requirement for other or further notice shall be, and it hereby is, dispensed with and waived; (d) the Court, having been asked by the Debtor to consider the Motion made under Sections 363(c)(2) and 364 (c)(1) of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), is authorized to enter final judgment and this Order constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052; and (e) the Court having considered the legal and factual bases set forth in the Motion, determines that just cause has been shown for the relief granted herein;

THE PARTIES HEREBY STIPULATE TO THE FOLLOWING:

1. The Motion shall be, and hereby is, granted until further order of this court or confirmation of a plan of reorganization, whichever shall occur first.

2. Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

3. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 14, 2008, (the "Petition Date") and is continuing in the management and possession of its business and property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. Prior to the commencement of the Debtor's chapter 11 case, Bibby Financial Services, ("Midwest"), Inc. ("Bibby") made advances to Debtor, pursuant to the terms of that certain Factoring Agreement, dated as of November 21, 2007, as amended, supplemented, restated or otherwise modified from time to time, and certain other sale and security agreements executed and delivered by the Debtor with, to, or in favor of Bibby. Bibby holds prepetition claims in excess of $724,495.00 on account of purchases of the Debtor's account receivables.

5. The Debtor agrees and acknowledges that, as of March 14, 2008, (i) the outstanding Advance amount under the Factoring Agreement was $724,495.00, (ii) the outstanding accounts receivable sold under the Factoring Agreement was $1,040,247.90 (the foregoing sales and all discount fees and accrued and unpaid fees and expenses thereon collectively referred to herein as the "Prepetition Indebtedness"); and the Debtor further agrees and acknowledges that the Prepetition Indebtedness constitutes a valid and binding obligation of the Debtor enforceable (except solely to the extent enforcement is stayed pursuant to section 362 of the Bankruptcy Code) in accordance with the terms of the Factoring Agreement, no offsets, expenses or counterclaims to the Prepetition Indebtedness exist, and the Prepetition Indebtedness is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law. ==THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(b).==

6. Bibby has agreed to provide postpetition financing to the Debtor pursuant to a DIP Factoring Agreement between Bibby and the Debtor dated March 14, 2008 (the "DIP Factoring Agreement") and consents to the Debtor's use of Cash Collateral as provided in this Order.

7. Pursuant to Section 363(c)(2) the Debtor may not use Cash Collateral without the consent of all parties with an interest in the property or demonstrating adequate protection to such parties under Section 361. Bibby has agreed to the Debtor's use of cash collateral on the terms and conditions set forth herein.

8. The Debtor has demonstrated adequate protection to Bibby for the Debtor's use of Cash Collateral by granting: (a) a replacement lien on the Debtor's post-petition property, with the specific exception of any amounts of the DIP Financing that are expended upon reasonable, necessary costs and expenses of preserving or disposing of the collateral that is

3

encumbered by Bibby's prepetition lien pursuant to the Factoring Agreement ("the **Designated 506(c) Rights**"). Therefore, the Debtor may use Cash Collateral as provided herein pursuant to Section 363(c)(2)(b).

9. Pursuant to Section 364(c)(1) of the Bankruptcy Code, Bibby has agreed to provide funding to the Debtor under the DIP Facility in an amount equal to 90% of the invoices issued by Debtor. Debtor believes that it will be issuing invoices totaling approximately $200,000.00 on a monthly basis. These sums will be considered post-petition financing as the continued factoring of receivables ("DIP Financing") as well as approval of the documents presented to this Court as the DIP Factoring Agreement. The DIP Factoring Agreement is attached to the Motion as Exhibit 1.

10. Bibby is willing to provide the DIP Financing pursuant to Section 364(c)(1) in exchange for superpriority administrative expense claims for the amounts so borrowed and related costs, fees, and expenses. THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(g).

11. No practical source of additional financing exists other than pursuant to the DIP Factoring Agreement since the Debtor acknowledges that (a) all or substantially all of its cash is the Cash Collateral of Bibby; (b) Bibby does not consent to the Debtor's use of the Cash Collateral going forward except pursuant to the terms of this Order; (c) uncertainty exists over whether the Debtor could obtain approval to use Cash Collateral or obtain a "priming" lien with respect to the Prepetition Collateral over Bibby's objection; and (d) the Debtor's only present means of obtaining funding is a debtor-in-possession financing facility pursuant to section 364 of the Bankruptcy Code.

4

12. The Debtor has stated that it desires to pursue a financial restructuring in cooperation with Bibby and that the Debtor believes that the best method to effectuate such a financial restructuring is by means of a chapter 11 case for the Debtor.

THE COURT HEREBY FINDS THAT:

13. Based on the record presented to the Court by the Debtor at the Hearing, (i) the Debtor is unable to obtain permanent financing from sources other than Bibby on terms more favorable than under the DIP Factoring Agreement; (ii) the Debtor has been unable to obtain unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense; and (iii) new credit is unavailable to the Debtor without its granting to Bibby claims having priority over that of administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

14. Based upon the record presented to the Court by the Debtor, the DIP Factoring Agreement has been negotiated in good faith and at arm's length between the Debtor and Bibby, and any credit extended and advances made to the Debtor by the Bibby pursuant to the DIP Agreement and this Final Order are deemed to have been extended or made in good faith within the meaning of section 364(e) of the Bankruptcy Code.

15. Based upon the record presented to the Court by the Debtor, the relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties and is in the best interests of the Debtor, its estate, creditors and equity security holders.

16. The terms of the financing arrangements between the Debtor and Bibby, set forth herein and in the DIP Factoring Agreement, have been negotiated in good faith and at arms' length between the Debtor and Bibby and any advances or other financial and credit accommodations which are made or caused to be made to the Debtor by Bibby pursuant to the

5

DIP Factoring Agreement are deemed to have been extended in good faith, as the term "good faith" is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

IT IS HEREBY ORDERED BY THE COURT THAT:

17. Having determined the above, this Court hereby grants the Debtor authority to obtain the DIP financing under the DIP Factoring Agreement as described in the Motion until further order of the Court or until the confirmation of a plan of reorganization whichever shall occur first.

18. Pursuant to Section 364(c)(1) of the Bankruptcy Code, The Post Petition Financier has agreed to provide additional funding to the Debtor under the DIP Facility in an amount equal to 90% of the invoices issued by Debtor. Debtor believes that it will be issuing invoices totaling approximately $200,000.00 on a monthly basis. These sums will be considered post-petition financing as the continued factoring of receivables ("DIP Financing") as well as approval of the documents presented to this Court as the DIP Factoring Agreement. The Total Maximum Facility under the DIP Facility is $1,750,000.00

19. Discount Fees on the outstanding Advances under the DIP Financing shall accrue from the date of the Advance until the principal amount thereof shall be paid in full, with discount fees equal to 1.5% for the first sixty (60) days or increment thereof that an Account Purchased remains outstanding and after such sixty (60) day period, an additional 0.5% for each thirty (30) day period or increment thereafter that such Account Purchased remains outstanding. The DIP Factoring Agreement attached hereto is incorporated into this Order and shall control in the event of a conflict with this order; and all Obligations due thereunder shall be due and payable in full on the earlier of (i) the date upon which a Plan of any Debtor is consummated, (ii)

the occurrence of an event of default under the DIP Factoring Agreement or (iii) the effective date of termination of the obligations hereunder. The Discount rate shall be computed on the basis of a year of 365/366 days and the actual number of days elapsed. The Debtor is authorized and directed to pay all discount rates, interest, fees and other amounts that may be required or necessary for the Debtor's performance under the terms of this Final Order or the DIP Factoring Agreement.

20. Bibby is granted an allowed superpriority administrative expense claim pursuant to Section 364(c)(1) having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor, now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, sections 503(b), or 507(b) of the Bankruptcy Code, such superpriority administrative claim being limited to an amount equal to the aggregate amount of financing. Notwithstanding the foregoing, Bibby has agreed to allow certain administrative expenses to be considered a priority over and above Bibby's first security interest (defined as the "Carve-Out"), to wit:

Any unpaid fees of the Clerk of the Bankruptcy Court or of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and (b);

b. Attorneys fees charged by counsel for the Debtor in the amount of $25,000.00; and

b. The financing of workers compensation premiums in the amount of $49,201.66, subject to Bibby approval to pay such workers compensation premiums directly out of Advances. THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(e).

7

21. Subject to applicable provisions of the Bankruptcy Code, no costs or administrative expenses which have been or may be incurred in the Debtor's chapter 11 case or in subsequent cases under chapter 7 of the Bankruptcy Code as a result of a conversion pursuant to section 1112 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the claims of Bibby with respect to the DIP Financing, and no other claim having a priority superior to that granted by this Final Order to Bibby shall be granted while any portion of the DIP Financing remains outstanding unless Bibby otherwise agrees, subject only to the Carve-Out and the Investigation Period.

22. No costs or expenses of administration which have or may be incurred in the Debtor's chapter 11 case, any conversion of any of the Debtor's chapter 11 case pursuant to section 1112 of the Bankruptcy Code, pursuant to section 506(c) of the Bankruptcy Code, or in any future proceedings or cases related hereto, shall be charged against Bibby, its claims or the Post-Petition Collateral, without the written consent of Bibby and no such consent shall be implied from any other action, inaction or acquiescence by Bibby or without an order of this Court authorizing the surcharging of such costs or expenses pursuant to Section 506(c) before such costs or expenses are incurred, and no obligations incurred or payments or other transfers made by or on behalf of the Debtor on account of the financing arrangements with Bibby shall be avoidable or recoverable from Bibby under sections 547, 548, 550, 553 or any other provision of the Bankruptcy Code, provided however any committee subsequently appointed pursuant to 11 U.S.C. § 1102 shall have a period of sixty (60) days from the conclusion of the meeting of creditors pursuant to 11 U.S.C. § 341 in which to commence an adversary proceeding challenging the extent, validity, or priority of Bibby's pre-petition liens or otherwise asserting any claims or causes of action against Bibby on behalf of the Debtor (defined as the

8

"Investigation Period"). THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(c).

23. The Debtor may use the proceeds of the advances made pursuant to the DIP Factoring Agreement only for the purposes specifically set forth in the DIP Factoring Agreement. Notwithstanding anything herein or in the DIP Factoring Agreement to the contrary, no such advances or any proceeds of the Prepetition Collateral may be used by the Debtor or any other person or entity to investigate, object to or consent in any manner, or raise any defense to, the validity, extent, perfection, priority or enforceability of the Prepetition Indebtedness, the DIP Financing and any discount fees, interest and accrued and unpaid fees and expenses thereon (collectively referred to herein as the "Post-Petition Indebtedness"), or any liens or security interests with respect thereto or any other rights or interest of Bibby to investigate or assert any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against Bibby subject only to the Investigation Period. THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(b).

24. As adequate protection and in accordance with section 363(e) of the Bankruptcy Code, Bibby is hereby granted a valid, binding, enforceable and perfected postpetition replacement liens and additional liens (the "Adequate Protection Liens") in all of the Debtor's assets with the specific exception of Designated 506(c) Rights subject only to the Carve-Out and Investigation Period. The Adequate Protection Liens shall secure an amount of the Prepetition Advances equal to the aggregate amount of Cash Collateral expended during the Post-Petition Period. THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(b)

25. The Debtor is hereby authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements in addition to

this Final Order as Bibby may reasonably require as evidence of and for the protection of the Post-Petition Indebtedness or which may be otherwise deemed necessary or advisable by Bibby to effectuate the terms and conditions of this Order, each of such documents, instruments, and agreements.

26. All post-petition advances and other financial accommodations under the DIP Factoring Agreement are made in reliance on this Order, and other than pursuant to this Order, there shall not at any time be entered in any of the Debtor's chapter 11 case any order which (a) authorizes the use of Cash Collateral by the Debtor in which Bibby has an interest or (b) under section 364 of the Bankruptcy Code authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in any property in which Bibby may hold a lien or security interest, or which is entitled to priority administrative expense status which is equal or superior to that granted to Bibby herein; unless, in each instance (i) Bibby, prior to entry of such an order, shall have given its express prior written consent thereto (and no such consent shall be implied from any other action, inaction or acquiescence from Bibby), or (ii) the DIP Financing and the Prepetition Indebtedness, without limitation, shall first be indefeasibly paid in full in cash, including all debts and obligations of the Debtor to Bibby which arises or results from the obligations, and interests authorized herein.

27. The Debtor hereby waives any and all claims or causes of actions against Bibby and any of its officers, directors, employees, attorneys, advisors or representatives relating to or arising in connection with the Factoring Agreement and the DIP Factoring Agreement. THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(h).

28.    Nothing herein shall limit the rights of Bibby to (i) seek further adequate protection in addition to the Adequate Protection Liens under sections 362, 363, or 364 or the Bankruptcy Code on account of obligations outstanding under the Factoring Agreement, (ii) seek relief from the automatic stay of section 362 of the Bankruptcy Code at any future time, (iii) request a conversion of any or all of the Debtor's chapter 11 case to a chapter 7 or the appointment of a trustee or examiner under section 1104 of the Bankruptcy Code, or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans in any or all of this chapter 11 case.

29.    The provisions of this Order shall inure to the benefit of the Debtor, Bibby and shall be binding upon the Debtor, Bibby and their respective successors and assigns including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to property of the estates of the Debtor, whether under chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case.

30.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to Bibby prior to the effective date of such modification, vacation or stay (including, without limitation, the Post-Petition Indebtedness), or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Factoring Agreement. Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by the Debtor to Bibby prior to the effective date of such modification, vacation or stay (including, without limitation, the Post-Petition Indebtedness), shall be governed in all respects by the original provisions of this Final Order, and Bibby shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the DIP Factoring Agreement with respect to all such indebtedness,

11

obligations or liabilities. The obligations, indebtedness or liability of the Debtor to Bibby under this Final Order (including, without limitation, the Post-Petition Indebtedness), and the DIP Factoring Agreement shall not be discharged by the entry of an order confirming a plan of reorganization(s) in the Debtor's chapter 11 case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, unless and until all Indebtedness is paid in full in cash prior to or concurrently with the entry of such order. **THIS PARAGRAPH IS BEING HIGHLIGHTED PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2(A)(2)(b).**

31. Any obligations or duties of the Debtor set forth in this Order shall be binding upon and enforceable against any agent retained by the Debtor to perform such obligations or duties; *provided, however*, that neither the retention by the Debtor of an agent for the purpose of performing any such obligations or duties nor the failure of any such agent to punctually and faithfully perform any such obligations or duties shall relieve or discharge the Debtor from the punctual and faithful performance thereof.

32. The Debtor irrevocably waives any right to seek any modifications or extensions of this Order without the prior written consent of Bibby, and no such consent shall be implied by any other action, inaction or acquiescence by Bibby.

Dated: 4/3, 2008

_Bruce W. Black_
U.S. Bankruptcy Judge

QUERREY & HARROW, LTD.
Counsel for the Debtor
175 West Jackson Boulevard, Suite 1600
Chicago, Illinois 60604
312-540-7000

12